# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,            :

           v.                    :    **CRIMINAL NO. 3:19-cr-160**

                      :    **(JUDGE MANNION)**

TRUMAN JONES,                        :                 FILED
                                                       SCRANTON
       **Defendant**                  :
                                                     OCT 2 5 2024
                                     :
                                                 PER _____
                                                        DEPUTY CLERK

## **MEMORANDUM**

Following a trial, Defendant Truman Jones was convicted of distributing of heroin and conspiring to distribute and possess with intent to distribute heroin. (Doc. 169). Defendant had retained Curt Parkins, Esq. to represent him, and Mr. Parkins represented him at trial. (Case No. 3:160-cr-127, Doc. 322; Case No. 3:19-cr-160, Docs. 147–150). After he was sentenced, Defendant appealed from his conviction, arguing that a previous indictment charging him with the same offenses should have been dismissed on Speedy Trial grounds with prejudice and challenging certain sentencing enhancements. United States v. Jones, Nos. 20-2765 & 20-2766, 2021 WL 6337787, at *1 (3d Cir. Sept. 10, 2021). The Third Circuit affirmed his conviction and sentence. Id.

Defendant now moves under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence. (Doc. 193). He argues that his sentence was imposed

in violation of the Constitution because he was deprived of his Sixth Amendment right to assistance of counsel. (Id.). In a subsequent filing, he also moves to amend his motion in order to bring an additional claim. (Doc. 205).

## I.    BACKGROUND

An indictment returned in May 2016 charged Defendant with conspiracy to distribute and distribution of heroin, possession with intent to distribute controlled substances, and possession of a firearm in furtherance of a drug trafficking crime. (Case No. 3:16-cr-127, Doc. 23). Before the scheduled trial in that case, Defendant moved to dismiss the indictment on the ground that the Speedy Trial Act's time limit had elapsed. (Doc. 343; Doc. 344). The Hon. A. Richard Caputo[1] granted Defendant's motion and dismissed the indictment without prejudice. (Doc. 353).

A new indictment bringing the same charges was returned four days later. (Doc. 1). Defendant pled not guilty to the indictment, (Doc. 13), and moved twice to dismiss it on Speedy Trial grounds. (Doc. 27; Doc. 68). These motions were denied. (Doc. 38; Doc. 75). A four-day jury trial was held during

---

[1] Following Judge Caputo's passing this case was reassigned to the undersigned.

which Defendant was represented by Mr. Parkins. (Docs. 147–150). The jury found Defendant guilty on all counts. (Doc. 92).

## II.    LEGAL STANDARD

### A. Motion to Vacate, Set Aside, or Correct the Sentence

Under 28 U.S.C. §2255, a prisoner in federal custody "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." §2255(a).

### B. Ineffective Assistance of Counsel

"It has long been recognized that the right to counsel" guaranteed by the Sixth Amendment "is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). Ineffective assistance of counsel claims are ordinarily governed by the standard established in Strickland v. Washington, 466 U.S. 668 (1984), unless the defendant is "deprived of counsel entirely," in which case he is entitled to relief without regard to Strickland. United States v. Wilson, 960 F.3d 136, 142 (3d Cir. 2020).

Under Strickland, one asserting ineffective assistance of counsel must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687. The first prong requires a showing that "counsel's representation fell below an objective level of reasonableness." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688). To establish the second, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

## III.    DISCUSSION

### A. Concessions (Grounds One & Two)

Defendant was tried on 9 counts: the first was conspiracy to distribute heroin and cocaine base, Counts 2 through 7 were distribution of controlled substances, Count 8 was possession with intent to distribute controlled substances, and Count 9 was possession of a firearm in furtherance of a drug trafficking crime. (See Doc. 92). He now submits that his trial counsel's performance was deficient because counsel conceded, without Defendant's consent, that Defendant had dealt drugs and possessed a firearm. (Doc. 193 at 3–6; Doc. 195 at 8–12).

First, Defendant does not contend that he expressly asserted to counsel that the objective of his defense was to maintain innocence on all counts. (See Doc. 195 at 8–12). He only states that he did not consent to counsel's strategy and that counsel did not ask him whether he consented to it. (Id.).[2] So he has not presented a structural error. See McCoy v. Louisiana, 584 U.S. 414, 427 (2018) ("[C]ounsel's admission of a client's guilt over the client's express objection is error, structural in kind."). His claim must therefore be analyzed under Strickland. See Burton v. Warden James T. Vaughn Correctional Ctr., No. 22-3256, 2024 WL 467541, at *2 (3d Cir. Feb. 7, 2024) (non-precedential) (explaining that, absent the defendant's objection to his trial counsel's strategy of stipulating certain incriminating evidence, that strategy "could not constitute a structural error, and thus did not foreclose the need for [the defendant] to establish prejudice from his counsel's alleged ineffective assistance").

Defendant has not made the required showing under either Strickland prong. As to the reasonableness of counsel's representation, he merely asserts that "there could have been no reasonable strategy for conceding [Defendant's] guilt to the drug trafficking counts." (Doc. 195 at 10). Simply

---

[2] The court notes that Mr. Parkins has sworn that he did discuss this strategy with Defendant prior to trial and that Defendant did agree to it. (Doc. 200-14 ¶3).

stating that his strategy was not reasonable does not establish that that was so. Decisions by counsel to concede certain elements or charges while contesting more serious (or more consequential) ones have not been deemed by courts in this circuit categorically unreasonable. See United States v. McNeil, No. 06-373, 2015 WL 1411938, at *11 (W.D. Pa. Mar. 26, 2015); United States v. Price, 4:06-cr-53, 2012 WL 3027844, at **7–8 (M.D. Pa. July 24, 2012); Clegg v. Sobina, No. 1:08-2326, 2010 WL 3168362, at *7 (M.D. Pa. 2010).

As to prejudice, Defendant states that his counsel's concessions "constituted prejudicially deficient performance." (Doc. 195 at 10, 12). He also asserts that, because of the concessions, he "was already subject to draconian sentencing guidelines from the outset of the case," and posits that "if counsel's objective was to concede the drug trafficking offense, he could have worked out a plea agreement to those offenses, thereby gaining acceptance of responsibility." (Doc. 195 at 9).

But he doesn't attempt to demonstrate any reasonable probability that, but for counsel's concessions, the result of his trial would have been different. Speculation about a potential plea agreement is unconvincing, for there is no indication that the government would have offered such an agreement. Nor does the record suggest that counsel refrained from plea

- 6 -

negotiations; Defendant rejected an agreement which would have allowed him to plead guilty to Counts One and Nine, acknowledging that Mr. Parkins "discussed and explained all of the terms of the plea agreement with me." (Doc. 55).

In his reply brief, Defendant notes that his counsel "made it clear that his goal was to contest two 'limited' issues: (1) that [defendant] utilized guns to traffic drugs and, (2) the drug weights." (Doc. 204 at 6). He provides a series of examples of statements by counsel, (id. at 7–8), and contends that "counsel's presentation impacted the rest of the charges" because "[i]t satisfies the elements of the remaining charges he was purportedly contesting." (Id. at 8). But none of the statements quoted amount to a concession regarding the gun charge's "in furtherance of a drug trafficking crime" element, 18 U.S.C. 924(c), or the charged drug weights.[3]

Lastly, Defendant argues that "counsel's words reinforced the typecast of drug dealers that elevated the likelihood of a broad-brushed finding of guilt based upon Mr. Jones fitting stereotypical beliefs about drug dealers." (Doc. 204 at 8–9). The court finds no prejudicial statement among those cited by

---

[3] Defendant initially represents that counsel was only contesting these two issues, but in the same paragraph suggests that counsel was contesting the conspiracy charge also. (Doc. 204 at 6–7). At any rate, he does not attempt to demonstrate that this strategic choice was unreasonable or prejudiced him.

Defendant. He offers, out of context, counsel's statement in closing argument that "Drug dealers like to have a reputation they are dangerous, so they carry guns, okay. True." (Doc. 149 at 151). Counsel was discussing expert testimony offered by the government about narcotics investigations:

> They put on what they call expert testimony. It's really non-sense. I mean, they tell you, oh, you know, drug dealing is dangerous so some drug dealers carry guns. Sure. But is that proof in this case of anything? No. Drug dealers like to have a reputation they are dangerous, so they carry guns, okay. True. But is that in any [way] actual evidence that that is what occurred in this case? No.

(Doc. 149 at 151). In its case in chief, the government had called Pennsylvania State Police Officer Christopher Maguire, who was admitted as an expert in illegal drug distribution investigations. (Doc. 147 at 169, 178). Officer Maguire testified that in his experience he had frequently seen drug dealers with firearms "to protect themselves and their money." (Id. at 183). He further testified that drug dealers exchange drugs for guns because "they want the guns, they want the street cred—the drug dealer—the street cred— they are gun carrying, tough guy, a thug." (Id. at 184). Defense counsel's discussion was intended to mitigate the effect of this testimony, and the court is not convinced that Defendant was further prejudiced before the jury, which already heard Officer Maguire's testimony.

Because Defendant has not made the required Strickland showing as to Grounds One and Two, he is not entitled to relief on these grounds.

- 8 -

## B. Choice of counsel / Conflict of interest (Ground Three)

### 1. Choice of counsel

Defendant next contends that he was denied the right to retain counsel of his choice. (Doc. 193 at 6–7; Doc. 195 at 12–16). See United States v. Gonzales-Lopez, 548 U.S. 140, 144 (2006) ("[A]n element of [the Sixth Amendment right to assistance of counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him.").

*First*, Defendant did not raise this argument on direct appeal, so it is procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 622 (1998). While ineffective-assistance-of-counsel claims need not be raised on direct appeal in order to raise them on collateral review, Massaro v. United States, 538 U.S. 500, 504 (2003), Defendant here raises a choice-of-counsel claim, not an ineffective-assistance-of-counsel one. See Gonzales-Lopez, 548 U.S. at 147–48 (discussing the distinction between the Sixth Amendment "right to counsel of choice" and the "right to effective counsel"). The former is not exempted from the doctrine of procedural default. See United States v. Calhoun, No. 19-3310, 2022 WL 17663472, at *2 (3d Cir. Nov. 30, 2022) (non-precedential) ("[B]ecuase Calhoun did not raise his choice-of-counsel claim at trial or on direct appeal, his habeas claim is

procedurally defaulted unless he can show (i) cause for his failure to raise the issue before collateral review, and (ii) actual prejudice.").

Even if it were not procedurally defaulted, Defendant's claim that he was denied the right to secure counsel of his choice is not supported by the record. To be sure, he expressed his dissatisfaction with Mr. Parkins on several occasions, in pro se filings and in court. (Doc. 63; Doc. 64; Doc. 78; Doc. 80; Doc. 95; Doc. 107; Doc. 124; Doc. 147 at 3–4). One letter to the court was titled "Objection / [redacted] of Order, Request for New Counsel," but contained only argument regarding Speedy Trial issues. (Doc. 64). That letter included a specific request for tolling, but no request for the court to allow substitute counsel or to appoint counsel. (Id.).[4]

Before jury selection, Defendant informed the court of certain disagreements between him and Mr. Parkins related to a fee agreement and the filing of motions. (Doc. 147 at 3). He expressed his desire to ensure that these issues were stated on the record. (Id. at 4). The government then referenced Defendant's letter mentioning a request for new counsel (discussed above) and the need to ensure that Defendant was "prepared to proceed with his counsel as is." (Id. at 5). Defendant at that time addressed

---

[4] Defendant later informed the court that this letter was not a motion at all. (Doc. 96).

the court again, but did not indicate that he wished to substitute counsel or have counsel appointed for him; instead, he simply reiterated his disagreements with Mr. Parkins. (Id. at 7). Defendant also stated that he was not prepared to proceed to trial that day because he believed certain pretrial motions needed to be filed, but still did not ask to be represented by different counsel. (Id. at 7–8). The court inquired further:

> THE COURT: All right. Well, the record will show what motions were filed and what their disposition was. Insofar as—is that the reason you feel as though you're not prepared to go to trial?
> DEFENDANT: I mean, that's one of the reasons.
> THE COURT: What's the other reasons?
> DEFENDANT: Basically just other motions I needed him to file that he just refused to file.
> THE COURT: It's about motions?
> DEFENDANT: Correct, sir.
> THE COURT: Anything else?
> DEFENDANT: No.
> THE COURT: All right. Well, given your counsel indicates he's ready to go to trial, these matters are on the record. You can raise them post-trial, clearly a number of ways you can raise them. So consequently, we are going to trial.

(Doc. 147 at 8–9).

The court cannot conclude that Defendant was *denied* the right to secure counsel of his choice when he did not ask to do so despite ample opportunity. The cases cited by Defendant regarding the inquiry required

upon a defendant's request to substitute counsel[5] are inapposite, for Defendant did not request to substitute counsel.

## 2. Conflict of interest

Defendant also discusses the Sixth Amendment "right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). (Doc. 195 at 14).[6] He does not specify what conflict of interest he believes existed, though he does refer to the various complaints he submitted "[i]n the months leading up to trial," including about a purported "conflict of interest … due to a financial interest." (Doc. 195 at 14).

To the extent it is Defendant's position that his disagreements with counsel about their fee arrangement, the expediency of additional pretrial motions, or other matters of litigation strategy constituted conflicts of interest forbidden by the Sixth Amendment, the court is not persuaded. While these disagreements may be characterized as conflicts, Defendant has not

---

[5] Doc. 195 at 15 (first citing United States v. Stubbs, 281 F.3d 109, 117 (3d Cir. 2002); then citing United States v. Chamberlin, 326 Fed. App'x 640, 642 n.5 (3d Cir. 2009); and then citing Cooley v. English, 74 Fed. App'x 227, 232 (3d Cir. 2002)).

[6] A conflict of interest Sixth Amendment claim, unlike a choice of counsel one, is a species of ineffective-assistance-of-counsel claim and thus may be raised for the first time on collateral review. See United States v. Savage, 85 F.4th 102, 115 n.11 (3d Cir. 2023).

suggested that they were conflicts *of interest*; that is, that he and Mr. Parkins had reason to pursue opposite objectives.

The circumstance in which this right ordinarily comes into issue is where "a lawyer [is] forced to represent codefendants whose interests conflict," such that he "cannot provide the adequate legal assistance required by the Sixth Amendment." Cuyler v. Sullivan, 446 U.S. 335, 345 (1980) (citing Holloway v. Arkansas, 435 U.S. 475, 481–82 (1978)); see also Gov't of the Virgin Islands v. Zepp, 748 F.2d 125, 135 (3d Cir. 1984) ("The typical conflict of interest cases giving rise to claims of ineffective assistance of counsel involve multiple representation of clients—the conflict exists between the interests of one defendant and the interests of other defendants served by the same attorney …").

Beyond multiple representation, a conflict of interest of constitutional significance can "arise out of personal interests of counsel that [are] 'inconsistent, diverse, or otherwise discordant' with those of his client and which affected the exercise of his professional judgment on behalf of his client." Zepp, 748 F.3d at 135 (quoting Model Code of Pro. Resp. EC 5–2; EC 5–14 (Am. Bar Ass'n 1980)). To amount to a constitutional violation, "[t]he conflict of interest must be 'actual.'" Id. at 135–36 (quoting Wood v. Georgia, 450 U.S. at 272–73). That is, "during the course of the representation," "trial

counsel's interest and the defendant's interest" must "diverge[] with respect to a material factual or legal issue or to a course of action." Id. at 136. For example, "when defense counsel has independent personal information regarding the facts underlying his client's charges, and faces potential liability for those charges, he has an actual conflict of interest." Id.

With regard to disagreements about which motions to file, there is no indication here that any such disagreement reflected divergent interests, rather than divergent views on the means through which to pursue the same interest. Cf. United States v. White, 174 F.3d 290, 296 (2d Cir. 1999) ("[I]n this case, [the defendant] merely expressed his disagreement with his attorney over whether to file certain motions, to pursue certain evidentiary leads, to object to the introduction of certain evidence at trial, and to call certain witnesses at trial and at a sentencing hearing. A defendant's decision to raise complaints of this nature before the trial court does not give rise to a conflict of interest between the defendant and his attorney.").

By his mention of "allegations of conflict of interest ... due to a financial interest," (Doc. 195 at 14), Defendant presumably refers to a fee agreement dispute of which he informed the court before trial. In a letter dated December 4, 2019 (five days before trial commenced), Defendant wrote that Mr. Parkins "waited until last week to tell me he will not file any motions except for a

speedy trial violation unless I come up with ten thousand dollars." (Doc. 78). In a follow-up letter sent the next day, he wrote that Mr. Parkins "visited me today at the jail and still is refusing to file the motions I request for him to file" and that Mr. Parkins "wants to rush me through because I don't have more money for him to file motions that I'm entitled to have heard for his financial reasons not because they lack merit." (Doc. 80 at 1). And Defendant addressed Judge Caputo before jury selection to state that Mr. Parkins "basically refused to file" certain motions Defendant wanted to file "because basically it breaks down to he asked me for more money basically two weeks prior to trial after I contacted him by mail and phone." (Doc. 147 at 3–4). Mr. Parkins then noted, also addressing the court, that "what I indicated to my client it just was beyond the scope of the fee, but, regardless, that the driving force behind the failure to file some motions that it's my position that they were already litigated before the Court and filed." (Id. at 5).

This type of dispute over fees does not automatically create an actual conflict of interest. "Although a defendant's failure to pay fees may cause some divisiveness between attorney and client, courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility." United States v. Thompson, No. 4:99-cr-89, 2005 WL 1155028, at *4 (M.D. Pa. Mar. 12, 2005) (quoting United States v.

Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998); see also United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997) ("[W]e have never held that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest and decline the invitation to do so here."); United States v. Zhadanov, No. 93-240, 1998 WL 633698, at *2 (E.D. Pa. Aug. 11, 1998).

Nothing to overcome this presumption has been presented here. Counsel represented that the "driving force" behind his failure to file the additional motions requested by Defendant was his determination that they had already been litigated. Defendant has not identified circumstances, beyond the mere existence of the fee dispute, suggesting that counsel's interest diverged from his with respect to an issue in this case.

The court therefore concludes that Defendant is not entitled to relief on this ground.

### C. Withdrawal of motion to suppress (Ground Four)

In his fourth ground for relief, Defendant contends that performance of one prior counsel was deficient for withdrawing a motion to suppress filed by an earlier counsel. (Doc. 193 at 7–9; Doc. 194 at 16–20).

Following his 2016 arrest, Defendant was interrogated by law enforcement officers. (Doc. 200-6). The following exchange occurred at the outset of that interrogation.

> [Officer Mike] CULP [Bureau of Alcohol, Tabacco, Firearms and Explosives]: [M]y name is Mike Culp and I'm with ATF. Um… Chris Maguire with the Pennsylvania State Police and Detective Shane Yelland with Wilkes-Barre PD. Um… before we get started let me advise you of your rights. You have the right to remain silent. Do you understand that?
> JONES: Yeah.
> CULP: Can you speak a little louder?
> JONES: Yes.
> CULP: Okay. Anything you say can be used against you in the court do you understand that?
> JONES: Yes.
> CULP: You have the right to talk with a lawyer before we ask you any questions and have a lawyer with you during questioning do you understand that?
> JONES: Yes.
> CULP: If you cannot afford a lawyer one will be appointed for you. If you wish before any questioning begins do you understand that?
> JONES: Yes.
> CULP: If you decide to answer any questions now without a lawyer present you have the right to stop answering at any time do you understand that?
> JONES: Yes.

(Doc. 200-6 at 2–3).

Defendant was then asked to read and sign a statement "if you wish to talk to us now without a lawyer present." (Id. at 3). That statement, titled

- 17 -

"Advice of Rights and Waiver," stated the same rights and included a statement labeled "Waiver," which read:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

(Doc. 200-7). Defendant signed the statement. (Id.).

In the previously dismissed case stemming from the same charges, Defendant's then-attorney Charles Witaconis filed a motion to suppress, among other evidence, "any statement attributed to him subsequent to his arrest, since said statements were not voluntarily, knowingly, and intelligently made, and any questioning of him was not preceded by adequate warnings as to the right to counsel, the right to remain silent and be free from self-incrimination." (Case No. 3:16-cr-127, Doc. 181). Mr. Witaconis later withdrew as counsel, (Doc. 258; Doc. 259), Defendant requested court appointed counsel, (Doc. 263), and Robert J. Levant entered to represent him. (Doc. 270). In a hearing on Defendant's motion to suppress, Mr. Levant informed the court that Defendant would no longer be moving to suppress his post-arrest statements. (Doc. 307 at 3).

Defendant now asserts that that withdrawal was erroneous, because the motion to suppress his statements was meritorious. (Doc. 195 at 19). His argument is this:

> Both the oral and written Miranda warnings provided to [Defendant] were deficient because law enforcement only told [Defendant] that his statements "can" be used against him and failed to inform him that they "will" be used against him.

(Id.).

"To give force to the Constitution's protection against self-incrimination, the Court established in Miranda [v. Arizona, 384 U.S. 436 (1966)] certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." Florida v. Powell, 559 U.S. 50, 59 (2010). Miranda instructed that the suspect "must be warned prior to questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. In another passage, Miranda explained that:

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequence of forgoing it. It is only through an awareness of

- 19 -

these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.

Id. at 469.

Defendant seems to understand the phrase "can and will," particularly the word "will," as essential to a Miranda warning. (Doc. 195 at 19). But the Supreme Court has "never insisted that Miranda warnings be given in the exact form described in that decision." Duckworth v. Eagan, 492 U.S. 195, 202 (1989); see also California v. Prysock, 453 U.S. 355, 359 (1981) ("Miranda itself indicated that no talismanic incantation was required to satisfy its strictures."). Rather, "[t]he inquiry is simply whether the warnings reasonably 'convey to a suspect his rights as required by Miranda.'" United States v. Warren, 642 F.3d 182, 184 (3d Cir. 2011) (quoting Duckworth, 492 U.S. at 203).

Defendant offers no persuasive reason why the formulation used here did not reasonably convey to him his right to remain silent. He argues that:

Informing a suspect in custody that his or her statements "can" be used against him or her is nothing more than stating a hypothetical possibility. However, informing a suspect that his or her statements "will" be used against him or her, as Miranda plainly mandates, is something completely different.

(Doc. 204 at 10).

Putting aside for a moment the fact that one formulation of the warnings used in <u>Miranda</u> itself omitted the "will," <u>see Miranda</u>, 384 U.S. at 479 ("... that anything he says can be used against him in a court of law ..."), this argument is not compelling. A warning that "anything you say can be used against you in court" makes a suspect aware of a potential, and pivotal, consequence of forgoing his right to remain silent: his statements may later be presented at a criminal trial as evidence to help prove him guilty. That "can" refers only to a "possibility" does not render the warning ineffective, because that possibility *is* the consequence. Uncounseled statements are not always used at a later trial. A warning therefore does not understate the extent of the right against self-incrimination simply by omitting "will." <u>See United States v. Rang</u>, No. 1:15-cr-10037, 2017 WL 74278, at *4 (D. Mass. Jan. 6, 2017) ("[T]he omission of the word 'will' has no impact on the legitimacy of the warnings provided."); <u>United States v. Waters</u>, No. 2:15-cr-80, 2016 WL 310738, at *7 (D. Nev. Jan. 26, 2016); <u>United States v. Leland</u>, 376 F. Supp. 1193, 1200 (D. Del. 1974).

Defendant's assertion that "the Supreme Court concluded that <u>Miranda</u> warnings that only provide for the possibility that statements could be used in court is insufficient," (Doc. 195 at 18 (citing <u>Estelle v. Smith</u>, 451 U.S. 454, 467 (1981)), is incorrect. <u>Estelle</u> said no such thing. At the cited page, it

simply quoted <u>Miranda</u>'s "can and will" formulation; it did not conclude that a warning without "will" would be insufficient. <u>See</u> 451 U.S. at 467.

Finally, Defendant appears to suggest that his right to counsel was violated because, though a criminal complaint had been filed against him, an attorney was not present at his interrogation. (Doc. 195 at 19). But he was informed of that right and waived it. (Doc. 200-7). And he submits no argument now that his waiver was not "knowing and intelligent." <u>See</u> <u>Patterson v. Illinois</u>, 487 U.S. 285, 292 (1988). (See Doc. 195 at 19; Doc. 204 at 11).

Because Defendant has not shown that a motion to suppress his post-arrest statements had any merit, he has not established that his counsel's decision to withdraw that motion was unreasonable. The court therefore concludes that Defendant is not entitled to relief on this ground.

### D. Voir dire questions on racial prejudice (Ground Five)

Defendant's next claim is that his trial counsel was ineffective for not requesting, asking, or objecting to the court's failure to ask questions directed toward exposing racial biases held by prospective jurors. (Doc. 193 at 10;

Doc. 195 at 20–22). He argues that, because he is African-American, the omission of such inquiry prejudiced him.[7]

The Third Circuit has "declin[ed] to adopt a rule which would require counsel to inquire as to racial prejudice, even where he reasonably deemed such questioning a poor strategic choice." Jacobs v. Horn, 395 F.3d 92, 118 (3d Cir. 2005). And absent record evidence to the contrary, it is presumed that a decision by trial counsel not to ask prospective jurors about racial prejudice "was sound trial strategy." Id. at 118.

The defendant in Jacobs, who was African-American, was convicted of murdering his girlfriend, who was white, and their daughter. Id. at 98, 116. In his habeas action, he argued, among other things, that his trial counsel was ineffective for "failing to inquire concerning racial bias among members of the jury, where the entire venire was white and the case involved the murder of a white female teenager and child by her African-American boyfriend." Id. at 100–101.

Considering this claim on appeal, the Third Circuit observed that:

Certainly nothing in the record suggests that [the girlfriend's] killing was racially motivated. Counsel reasonably could have

---

[7] By his citation to precedent involving a trial court's denial of a defendant's request to make voir dire inquiry as to racial prejudice, (Doc. 195 at 21–22), Defendant appears also to take issue with the trial court's failure to ask such questions sua sponte. But he did not raise this argument on direct appeal, so it is procedurally defaulted. See Bousley, 523 U.S. at 622.

believed that probing the jurors' potential racial prejudices might unduly emphasize the racial differences, somehow inject racial issues into a trial where none existed, or taint the jurors' view of Jacobs and his attorney. In other words, counsel reasonably could have concluded that asking prospective jurors questions about racial prejudice would do more harm than good. Under these circumstances, and in the absence of any evidence to the contrary, we presume that counsel's decision was sound trial strategy.

Id. at 118.

The court reasoned that the defendant had "failed to overcome this strong presumption" by his reference to "continuing racial tensions" in the area following the indictment of a former mayor for allegedly participating in a decades-earlier killing of an African-American woman (because Defendant did not "describe the racial climate" in the area "at the time of his trial" or "explain how the racial tensions ... could have impacted his trial) or by his assertion that his trial was "racially sensitive" because of the interracial relationship. Id. at 118–19.

Here, the only reason offered by Defendant for why his trial counsel should have questioned prospective jurors about potential racial biases is that he was "an African-American defendant facing serious criminal charges." (Doc. 195 at 22).

Jacobs also involved an African-American defendant, and involved more serious charges—first-degree murder—and a potential death penalty.

- 24 -

Id. at 97. Plus, that case involved a white victim and an entirely white venire panel. Id. at 116. Still, those circumstances alone were insufficient to establish that the defendant's trial counsel was ineffective for failing to request voir dire questions regarding racial prejudice. Id. at 119. Defendant here does not attempt to distinguish Jacobs in his reply brief, (Doc. 204 at 11–12), and offers less reason to overcome the presumption that his trial counsel's omission of such questions was reasonable. So, in accordance with Jacobs, the court must reject his argument in this ground.

To be sure, as Defendant reminds us, (Doc. 195 at 22; Doc. 204 at 11–12), questions about racial prejudice are a proper means by which to identify jurors incapable of rendering a fair verdict, and a criminal defendant is entitled, upon his request, to ask such questions. See United States v. Robinson, 485 F.2d 1157, 1159 (3d Cir. 1973). But that does not mean that his attorney is necessarily ineffective for failing to so request. Jacobs, 395 F.3d at 119.

The court concludes that Defendant is not entitled to relief on this ground.

### E. Plea agreement negotiations (Ground Six)

The next ground is a claim that trial counsel was ineffective for not "discuss[inig] with [him] and pursu[ing] with the government an option of

- 25 -

entering a conditional guilty plea, thereby preserving his right to appeal the" denials of his motions to suppress and dismiss. (Doc. 193 at 11; Doc. 195 at 23–24).

Before trial, Defendant rejected a plea agreement which would have allowed him to plead guilty to Counts One and Nine of the Indictment. (Doc. 55 ¶1). That agreement would have allowed him to retain his right to appeal his motion to suppress, but would have required him to waive the right to appeal his motions to dismiss. (Doc. 200-8 ¶34). Defendant acknowledged that Mr. Parkins "discussed and explained all of the terms of the plea agreement with" him, that he "understood all of the terms of the plea agreement," and that "[a]fter deliberation," he "knowingly and voluntarily expressly rejected the terms of the plea agreement." (Doc. 55 ¶3–4).

So Defendant's assertion that trial counsel did not discuss or pursue a conditional guilty plea agreement preserving Defendant's right to appeal his suppression motion, (Doc. 195 at 23), is contradicted by the record; Defendant *was* offered such an agreement. (Doc. 55; Doc. 200-8 ¶3–4). And to the extent Defendant demands that counsel should have insisted also to retain the right to appeal Defendant's motions to dismiss, (Doc. 195 at 23), there is no indication that the government would have offered those terms. To the contrary, the fact that the government did offer an agreement

preserving his right to appeal the suppression motion but not the motions to dismiss suggests that it was not willing to abandon an appeal waiver entirely.

Defendant relies on United States v. Booth, 432 F.3d 542 (3d Cir. 2005) and United States v. Winsor, 675 F. Supp. 2d 1069 (D. Or. 2009). (Doc. 195 at 24). In Booth, the defendant argued that his counsel was ineffective for failing to inform him that he could enter an "open plea" to the counts with which he was charged, and thereby receive a lower sentence for acceptance of responsibility. 432 F.3d at 546–47.[8] In Winsor, the defendant, who had plead guilty (pursuant to a plea agreement in which he waived his right to appeal) to receipt of child pornography, argued that his trial counsel was ineffective for failing to inform him that he could have preserved his right to appeal (which he wanted to do) had he submitted to a "stipulated facts" trial. 675 F. Supp. 2d at 1071–72. (See also D. Or. Case No. 3:08-cr-99, Doc. 46-2 at 15 ¶11).

Here, Defendant does not assert that his counsel failed to inform him that he could enter an open plea and thereby benefit from acceptance of responsibility. He instead claims that counsel should have secured a plea agreement with more favorable terms. And Defendant was not unaware that

---

[8] "An 'open' guilty plea is a plea made by a defendant without the benefit of a plea agreement entered into with the Government." Booth, 432 F.3d at 543 n.1.

he could preserve his right to appeal by standing trial, for he *did* stand trial and *did* appeal. 2021 WL 6337787.

Unlike the neglect alleged in <u>Booth</u> and <u>Winsor</u>, the failure alleged here involves a result out of counsel's control.[9] Counsel could not have forced the government to revise the agreement to Defendant's liking. <u>See United States</u>, No. CRIM 88-410, 1999 WL 1212883, at *5 (D.D.C. Oct. 25, 1999) (noting that a defense attorney is "essential powerless to effectuate a conditional plea"). A conditional plea requires "the consent of the court and the government." Fed. R. Crim. P. 11(a)(1). A defendant thus has "no enforceable 'right' to enter a conditional plea." <u>United States v. Fisher</u>, 772 F.2d 371, 374 (7th Cir. 1985). For these reasons, counsel's failure to obtain an agreement with terms Defendant would have accepted, especially when there is no indication that he could have done so, cannot be considered deficient. <u>See Williams</u>, 1999 WL 1212883, at *5; cf. <u>United States v. Sarraga-Solana</u>, Cr. No. 04-144, 2010 WL 1286712, at *2 (D. Del. Mar. 30, 2010) ("To the extent Defendant contends that counsel was deficient for

---

[9] The court notes again that Defendant was clearly informed that it was *possible* to enter a conditional plea preserving the right to appeal, because he was offered, understood, and rejected one, (Doc. 55; Doc. 200-8 ¶34). So he cannot complain that his counsel did not inform him of that possibility. Nor can he complain of any failure by counsel to "pursue" a conditional plea agreement, because, again, he *was offered* one. The only remaining error asserted is thus counsel's failure to secure a *different* plea agreement.

failing to advise him of the possibility that he could enter a conditional guilty plea, the Court likewise concludes that Defendant cannot establish ineffective assistance of counsel."); United States v. Acosta-Corralco, Cr. No. 6:10-411, 2012 WL 13013606, at *2 (D. S.C. Aug. 23, 2012).

The court therefore concludes that Defendant is not entitled to relief on this ground.

### F. Pretrial advice (Grounds Seven & Eight)

Next, Defendant claims that his trial counsel was ineffective for having "consistently expressed an unreasonably positive prognosis about [Defendant's] chances of winning at trial." (Doc. 193 at 12; Doc. 195 at 24–27). On a similar note, Defendant also claims that his trial counsel provided him inadequate advice regarding his sentencing exposure. (Doc. 193 at 12–13; Doc. 15 at 28–29). He asserts that:

> Trial counsel never thoroughly reviewed with him the application of the United States Sentencing Guidelines and his sentencing exposure. Counsel did not explain how the mandatory sentences operated. Prior to trial, he provided no advice to [Defendant] regarding his true sentencing exposure if he lost at trial compared to the benefits in entering a plea. Furthermore, he was never advised by trial counsel of the import of losing acceptance of responsibility and a true worst-case sentencing scenario by his decision to proceed to trial.

(Doc. 195 at 29). If he had "been adequately advised of his sentencing exposure," Defendant posits, he "would have entered a guilty plea." (Id.).

No doubt that the right to effective assistance of counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 163 (2012). And a defendant may state a Sixth Amendment claim in connection with that process if "he alleges that the advice he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). For example, counsel's performance may be deficient where he gives the defendant incorrect legal advice. See United States v. Stallings, No. 1:14-cr-69, 2021 WL 1217399, at *3 (M.D. Pa. Mar. 26, 2021) (first citing Laflin, 566 U.S. at 160–61, and then citing United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015)).

But merely asserting that his counsel's advice was unreasonable or insufficient does not entitle a petitioner to a hearing, much less to habeas relief. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 & n.12 (3d Cir. 1991); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010). Defendant asserts that, because counsel was "well-aware of" the "mountain" of evidence against him, he should have recommended that Defendant enter a plea, but that counsel nevertheless "consistently expressed an unreasonably positive prognosis about his chances of winning at trial." (Doc. 195 at 26–27). He

does not identify what information counsel withheld, what legal error he made, or even what recommendation he gave. These "vague and conclusory allegations" are plainly insufficient. Zettlemoyer, 923 F.2d at 298; see also Palmer, 592 F.3d at 394–95.

As to his sentencing exposure, even if Defendant's bare assertions that his counsel failed to explain his possible sentence were sufficient to create a factual dispute,[10] he has not established that he was prejudiced on this ground because the record evidences that he was advised of his sentencing exposure and because he has not shown that but for the allegedly deficient performance by counsel, "there is a reasonable probability that … the result of the proceeding would have been different. Laflin, 566 U.S. at 163. (2012).

When it comes to advice regarding a defendant's potential sentence, "all that the law requires is that the defendant be informed of his[] exposure in pleading guilty"; "it 'does not require that'" he "'be given a reasonably accurate "best guess" as to what his[] actual sentence will be.'" United States v. Fazio, 795 F.3d 421, 428 (3d Cir. 2015) (quoting United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007)). A defendant has been adequately

---

[10] The court notes that Mr. Parkins swears that, before trial, he "fully explained the terms of the plea agreement to [Defendant], and the potential sentencing ramifications, including under the sentencing guidelines, of proceeding to trial instead of pleading guilty." (Doc. 200-14 ¶5).

informed of his sentencing exposure where he is warned in open court "of the maximum sentences accompanying the charged offenses" and that "there [are] no guarantees as to sentence." United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001).

Here, at both his initial appearance and his arraignment, Defendant was informed of and acknowledged his understanding of the minimum and maximum penalties accompanying the offenses with which he was charged. (Doc. 200-11 at 4–5; Doc. 200-12 at 3–5). He was thus informed of his sentencing exposure, and he does not allege facts suggesting that counsel thereafter stripped him of this understanding or otherwise misled him regarding his potential sentence. And whether counsel advised him about the "true worst-case scenario" or not, Defendant *was* informed of the worst-case scenario: his maximum sentences.

Plus, Defendant offers no more than a bare allegation that had he received the allegedly withheld advice, a different outcome would have resulted. (Doc. 195 at 29). On the basis of generic assertions that he received unreasonable or insufficient advice (and considering that he *was* informed of his minimum and maximum sentences), the court cannot conclude that "there is a reasonable probability that, but for counsel's"

alleged "errors, the result of the proceeding would have been different." Laflin, 566 U.S. at 163. So Defendant has not established prejudice. Id.

For these reasons, the court concludes that Defendant is not entitled to relief on these grounds.

### G. Post-trial motions (Ground Nine)

In his ninth ground for relief, Defendant contends that his counsel was ineffective for failing to file a Rule 29 motion for judgment of acquittal or a Rule 33 motion for a new trial. (Doc. 193 at 13–14; Doc. 195 at 30–31). For this claim he relies exclusively on the facts that counsel did move for leave to file such motions nunc pro tunc, (Doc. 97), and that witness credibility was challenged during trial. (Doc. 195 at 30–31 (citing Doc. 148 at 75–179)).

These facts do not establish that counsel's performance was deficient on this score. First, Defendant infers from counsel's request for leave to file post-trial motions that counsel recognized the merit of such motions. (Doc. 30 at 3). Even if counsel did believe them meritorious, that belief alone would not show that they *were* meritorious, such that it would have been unreasonable not to file them. Likewise, that witness credibility (a factor that courts reviewing Rule 33 motions may consider, United States v. Pepe, 209 F. Supp. 592, 594 (D. Del. 1962)) was challenged in this case does not show

that the verdict would likely have been overturned had counsel filed a Rule 33 motion.

Because Defendant has not made the showing required by <u>Strickland</u>, he is not entitled to relief on this ground.

## IV.   MOTION TO AMEND

After his motion and supporting briefs were filed, Defendant moved to amend his §2255 motion to raise a tenth ground for relief. (Doc. 205). The government opposes Defendant's motion. (Doc. 205-1; Doc. 210).

Defendant seeks to add as a ground for relief the claim that his counsel was ineffective for not moving to suppress physical evidence seized from Defendant's residence and not requesting a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) regarding the search warrant issued for the residence. (Doc. 205 ¶8a; Doc. 206 at 4–7).

"A party may amend its pleading once as a matter of course" within 21 days of serving it or within 21 days of a responsive pleading." Fed. R. Civ. P. 15(a)(1). Otherwise, it may do so "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Rule 15(a)(2).

But because a 1-year period of limitations applies to motions brought under 28 U.S.C. §2255, §2255(f), a petitioner seeking to amend his §2255 motion outside that statutory period must assert that his proposed amendment "relates back" to the date of his timely pleading, under Fed. R. Civ. P. 15(c).  See United States v. Santarelli, 929 F.3d 95, 99–100 (3d Cir. 2019).[11] There is no dispute here that Defendant's proposed amendment would be time-barred if it does not "relate back" to his timely filed §2255 motion. (See Doc. 206 at 7; Doc. 210 at 6–9; Doc. 211).

An amendment "relates back" to an earlier pleading if "the amendment asserts a claim or defense that arose out of the same conduct, transaction, or occurrence—or attempted to be set out—in" that pleading. Fed. R. Civ. P. 15(c)(a)(B).  This rule "relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core

---

[11] The Federal Rules of Civil Procedure apply to habeas corpus proceedings "to the extent that the practice is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases." Fed. R. Civ. P. 81(a)(4)(A). 28 U.S.C. §2242 provides that applications for habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." And the Rules Governing §2255 Proceedings provide that "[t]he Federal Rules of Civil Procedure … to the extent they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." 28 U.S.C. foll. §2255, Rule 12. As those rules and §2255 "are silent" regarding the relation back of amendments, Rule 15(c) may be applied in this context. United States v. Thomas, 221 F.3d 420, 434 (3d Cir. 2000).

of operative facts uniting the original and newly asserted claims." <u>Mayle v.</u> <u>Felix</u>, 545 U.S. 644, 659 (2005).

In the previous criminal action against Defendant based on the same charges, his then-counsel Charles Witaconis moved to suppress physical evidence obtained from Defendant's residence pursuant to a search warrant. (Case No. 3:16-cr-127, Doc. 181; Doc. 182). He argued that the application for that search warrant lacked a sufficient basis for the finding of probable cause and contained a material omission. (Case No. 3:16-cr-127, Doc. 182 at 1–4). At the suppression hearing, Defendant's counsel (who by then was Robert Levant), limited the scope of the motion to just "the sufficiency of the warrant." (Case 3:16-cr-127, Doc. 307 at 3). Defendant's motion to suppress was denied. (Case No. 3:16-cr-127, Doc. 303). In this case, Mr. Parkins filed a motion to suppress evidence seized from Defendant's residence and requesting a <u>Franks</u> hearing, (Doc. 29), but subsequently withdrew that motion. (Doc. 32 at 1 n.1).

Defendant now submits that counsel was ineffective for not moving to suppress physical evidence (or for having withdrawn such motion) on the theory that the affidavit supporting the warrant application was "defective because [the agent who prepared it] failed to advise the reviewing court of critical and material information that would have affected the issuance of the

warrant." (Doc. 206 at 6). He submits that relation back is appropriate because one of the claims in his original motion arose out his counsels' withdrawal of pre-trial motions to suppress, and his new claim "involves counsel withdrawing a different pre-trial motion to suppress." (Doc. 206 at 7; Doc. 211 at 3). He further notes that the search warrant was executed on the same day that he was interrogated. (Doc. 211 at 4).

Similar reasoning was rejected in Mayle v. Felix. 545 U.S. at 661. In his original habeas petition, the petitioner there asserted a Sixth Amendment claim based on the admission at trial of a prosecution witness's videotaped statements made at a jailhouse interview. Id. at 650. After the statute of limitations had expired, he attempted to amend his petition to add a Fifth Amendment claim based on the introduction at trial of statements he made during a pretrial police interrogation. Id. at 651–52.

The petitioner argued that his new claim related back to his original one because it arose from the same "transaction" or "occurrence": his criminal trial at which both statements were admitted. Id. at 661. Since the constitutional transgressions occurred not when the statements were made but when they were used against him at trial in violation of his rights against self-incrimination and to confront witnesses against him, he reasoned, it was the trial itself that mattered for relation back. Id.

According to the Court, the petitioner had "artificially truncate[d] his claims by homing in only on what makes them actionable in a habeas proceeding." Id. It observed that "[t]he essential predicate for his self-incrimination claim was an extrajudicial event, *i.e.*, an out-of-court police interrogation," and that "[t]he dispositive question in an adjudication of that claim would be the character of [the petitioner's] conduct, not in court, but at the police interrogation." Id. Further noting that under the Rules Governing Habeas Corpus Proceedings, a petitioner must "specify all grounds for relief" and "state the facts supporting each ground,"[12] the Court reasoned as follows.

> Under that Rule, [the petitioner's] Confrontation Clause claim would be pleaded discretely, as would his self-incrimination claim. Each separate congeries of facts supporting the grounds for relief, the Rule suggests, would delineate an "occurrence." [The petitioner's] approach ... is boundless by comparison. A miscellany of claims for relief could be raised later rather than sooner and relate back, for "conduct, transaction, or occurrence" would be defined to encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. An approach of that breadth ... views "occurrence" at too high a level of generality.

---

[12] As Mayle v. Felix involved the petition of a state prisoner, the Court cited Rule 2(c) of the Rules Governing Habeas Corpus Cases. 545 U.S. 649, 661 (2005). Rule 2(b) of the Rules Governing §2255 Proceedings likewise requires that a §2255 movant "specify all the grounds for relief" and "state the facts supporting each ground," 28 U.S.C. foll. §2255 Rule 2(b), so the Court's analysis properly informs that here.

Id. Here too, Defendant focuses on what makes his claims actionable: his attorneys' withdrawal of (or failure to file) motions to suppress. (Doc. 206 at 7; Doc. 211 at 3). Adjudication of these claims, though, would involve an assessment not of his attorney's conduct but of the police officers'.

The claim to be asserted in Defendant's proposed amendment arises from the conduct of police officers in preparing an application for a search warrant. (Doc. 206 at 6–9). Ground 4 of his §2255 motion, see supra Section III.C, in which Defendant also faults counsel for withdrawing a motion to suppress, centers on the conduct of police officers in interrogating him after his arrest. (Doc. 193 at 7–9; Doc. 194 at 16–20). The former claim's factual predicate would not be necessary to decide the latter claim, and vice versa.[13] The two claims thus do not share a "common core of operative facts." Mayle v. Felix, 545 U.S. at 659 (emphasis added).

Defendant eventually does shift his focus to the factual circumstances underlying his claims, noting that "both the execution of the search warrant at [Defendant's] residence as well as his interrogation both occurred on February 6, 2016." (Doc. 211 at 4). But the court finds no support for extending "conduct, transaction, or occurrence," Fed. R. Civ. P. 15(b)(1), to

---

[13] Presumably for that reason, Defendant's original §2255 motion and brief made no mention of the allegedly defective affidavit. (See 193; Doc. 195).

group any two events that happen on the same day. Neither is it persuaded that, because the search warrant's execution and Defendant's interrogation were part of the same *sequence* of law enforcement investigation, they are *one* occurrence or transaction. To the contrary is Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 237–38 (3d Cir. 2017), in which claims arising from the same allegedly erroneous jury instructions (regarding, respectively, two different charged offenses) nevertheless did not arise out of the same conduct, transaction, or occurrence. "Although both claims" there "coincidentally relate[d] to the jury charge and involve[d] the term 'serious bodily injury,' these common features [were] not enough to make the claims arise from the same 'operative facts' when the problems asserted with the jury charges [were] entirely unrelated." Id. at 237.

The amendment proposed here does not simply "restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction, or occurrence in the preceding pleading." United States v. Santarelli, 929 F.3d 95, 102 (3d Cir. 2019) (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)). It instead adds a factual predicate, the preparation of an allegedly defective affidavit of probable cause, (Doc. 206 at 6–7), that was not

discussed in his original §2255 motion or supporting brief and did not form the basis of any claims asserted therein. (Doc. 193; Doc. 195).

The court concludes that the search warrant application and the interrogation were thus two distinct "occurrence[s]" or "transaction[s]," and so Defendant's amendment does not "relate back" to his original §2255 motion. Fed. R. Civ. P. 15(b)(1). Defendant's motion for leave to amend his §2255 motion will therefore be denied because it was filed outside §2255's statute of limitations. 28 U.S.C. §2255(f).[14]

## V.   CERTIFICATE OF APPEALABILITY

An appeal from a final order in a proceeding under 28 U.S.C. 2255 may not be taken unless a certificate of appealability has been issued. 28 U.S.C. §2253(c)(1)(B). "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). Such a showing requires that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve

---

[14] As the government observes, (Doc. 210), Defendant's judgment of conviction became final on January 10, 2022, when his petition for certiorari was denied, <u>Jones v. United States</u>, No. 21-6460, 142 S.Ct. 830 (2022), and his motion for leave to amend his §2255 petition was filed more than one year later, on March 13, 2024. (Doc. 205).

encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

The court concludes that jurists of reason could not disagree with its resolution of Defendant's constitutional claims and that the issues presented are not adequate to deserve encouragement to proceed further. A certificate of appealability therefore will not issue.


## VI.    CONCLUSION

For the foregoing reasons, the court concludes that Defendant's motion and the record conclusively show that he is not entitled to relief on any of the grounds asserted. So no hearing will be granted, and Defendant's motion to vacate, set aside, or correct his sentence will be denied. No certificate of appealability shall issue. Defendant's motion for leave to amend his §2255 motion will also be denied. An appropriate order follows.




*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 25, 2024**
19-160-01